DEL TORO v. THE PEOPLE.

APPEAL from the District Court of San Juan.

No. 11.—Decided December 1, 1904.

MINES—EMINENT DOMAIN OF THE STATE.—The mining law in force is based upon the principle of the State's eminent domain, limited by the concession of the mineral substances adhering to the soil made to the person occupying the surface and, as to other substances, by the award to the person first denouncing the existence thereof.

ID.—SURFACE TAX—NATURAL SALT MINES—EXEMPTION FROM TAXES, IMPOSTS AND CHARGES.—Although the budget laws of 1888-1889 and 1890-1891 exempt the exploitation of natural salt mines from all taxes, dues and charges, for a period of ten years, said exemption can in nowise refer to the surface tax imposed by the State, to the payment of which the grantee is obligated, especially if the same has been specified in the title issued to him and which he has accepted without protest.

ID.—The surface tax is a tribute fixed by the State upon the occupation of lands belonging to it, for the establishment of an industry by private persons to whom the concession is made.

STATEMENT OF THE CASE.

This is a proceeding instituted in the District Court of San Juan by Alberto del Toro, property-owner and a resident of Cabo Rojo, against the People (Administration), this suit having been commenced under administrative proceedings, for the purpose of securing a declaration as to the propriety of the collection of a surface-tax levied on the "Salinas Caborrojeñas;" the plaintiff being represented before this Supreme Court by Attorney Herminio Díaz Navarro, and the Administration by the *fiscal;* which case is pending before us on an appeal taken by the plaintiff from the judgment rendered by aforesaid court, which reads as follows:

"In the city of San Juan, Porto Rico, August 11, 1903. A hearing was had of this administrative proceeding instituted in this court by Attorney Herminio Díaz Navarro, who was afterwards substituted by his colleague, Jacinto Texidor y Alcalá del Olmo, on behalf of Alberto del Toro, a resident of Cabo Rojo, plaintiff, against the People (Administration), defendant, represented by the prosecuting attorney of this court, in the matter of a decision rendered by the Civil Secretary for this Island with reference to a tax assessed upon the salt mines, 'Salinas Caborrojeñas.'

"On October 20, 1888, Alberto del Toro filed a petition with the Governor and Captain-General of this Island for the purpose of obtaining a dominion title to fourteen salt-mine claims, known as 'Salinas Caborrojeñas,' situated at the place called 'Boquerón,' in the township of Cabo Rojo, specifying the same, and accompanying the petition with a map giving the metes and bounds thereof. The dominion title was issued, he being put in possession under the clauses set forth therein, the seventh of these reading: 'To pay as fees for the use of the surface and products thereof the taxes provided for by the law in force;' and the tenth: 'To comply with all the conditions contained in the Royal Decree of January 15, 1867, and the regulations for the execution thereof, and in that of August 23, 1868, relative to the exploitation of saline substances, without prejudice to the other provisions of the Law of Harbors and Forests, applicable thereto,' all of which appear in the papers of file No. 25.

"In No. 10, on complaint of Alberto del Toro that he had been called upon to pay taxes on the salt mines 'Salinas Caborrojeñas,' amounting to $5,427 and interest thereon, it was decided 'that inasmuch as the taxes for ten years amounted to aforesaid sum, and 6 per cent. annual interest, the same be liquidated by paying annually the arrears of two years, in which manner the debt would be settled in five years.'

"With the complaint was filed a letter addressed by the aide-de-camp of the Military Governor to said Toro, informing him that he was in error in supposing that the laws in force exempted him from paying all taxes assessed upon the salt mines; that such salt mines as were formerly private property were exempt from all taxation; but those belonging to the State, while free from other taxes or charges for the use thereof, must pay the annual dues. 'Your case comes under the second condition and therefore the tax may be collected.' Toro instituted an administrative appeal, and the papers of the proceedings having been called for, the following were forwarded: A

certificate from the secretary of the Municipal Council of Cabo Rojo, referring to losses sustained by Toro in the 'Salinas Caborrojeñas,' as a result of the cyclone of August 8, 1899, amounting to $24,703.75, provincial currency, according to expert appraisement, for which reason said salt mines were exempt from the industrial tax for the fiscal year 1899-1900, as a result of proceedings instituted by the municipal council; a petition presented by Toro to the Governor on January 30, 1900, in English, with a translation thereof; praying for an absolute remission of the sums demanded up to October 18, 1898, when the Spanish sovereignty ceased, and from that date to June 30, on account of the aforesaid cyclone, based upon the budget law of 1900-1901, articles 9 and 5, with the endorsements contained therein, disposed of in the manner set forth in the second finding of facts.

"Toro having instituted administrative proceedings, he requested that the natural salt pond, 'Caborrojeña,' be exempted from paying any tax for ten years from July, 1900, alleging as facts: the grant made on April 5, 1900, and issue of dominion title, which was reported to the *Intendencia* for collection of the proper tax in due time, he being informed that the salt mines were situated in lands and mangrove marshes belonging to the State; that he executed the works necessary to establish the industry without his being required to pay tax, either under the Spanish sovereignty or during the early part of that of the United States; that on the 21st of November, 1899, he was notified that he owed $5,347 for taxes from October 10, 1889, to 1898, besides the interest thereon; that he appealed to the Governor-General, alleging the budget laws of 1888-1889 and 1900-1901, articles 9 and 5 thereof, declaring salt mines free from all State and municipal taxes, dues and charges, during ten years, except 2 cents per ton exported, payable at the custom-house, which term expired on June 30, 1900; that the bureau of internal revenue informed him that Circular No. 128, of October 25, 1888, approved by Royal Order of December 24, provides that the grantees of salt mines shall continue to pay the surface tax, inasmuch as said tax was included in the specifications of article 4, chapter 1, section 1, letter B, of receipts; that Cortada & Co., of Ponce, applied to the Colonial Office for an explanation of article 9 of the budget law, said request eliciting the Royal Order of December 24, 1888, which reads: 'The surface dues being an occupation tax levied by the State upon lands belonging to it, and not to be confused with the taxes, dues and charges from which natural salt ponds or mines are exempted by the

law, the request is denied; and Toro having requested that he be exempted from paying the surface-tax due by him, the bureau is of opinion that his request should not be granted, but that he may be allowed an extension of time;' that the Civil Secretary accepted the report and proposed that Toro pay the arrears of two years, and so on every succeeding year; that this proposition was concurred in by the judicial board; that the aforesaid opinion having been obtained, it was approved by the Governor, Toro being required to satisfy the liquidated amount, the interest of the arrears to be settled on the day the respective payments were effected; that on May 8, 1900, Toro made the first payment. As legal grounds he invoked article 9 of the budget law of this Island for 1888-89; Royal Orders of October 27 and December 24, 1888; article 5 of the budget law for 1890-91; the laws of April 11, 1849, July 6, 1859, January 15, 1867; Royal Order of August 23, 1868; and the regulation in force on April 5, 1890, when the grant was made; but after the publication of the law of March 3, 1895, only what is prescribed in article 1 thereof is in force, and inasmuch as in said law the surface tax is not recognized as in the nature of a dominion title, Royal Order of December 24, 1888, cannot be invoked in support thereof, for even if said order exists it is not binding, because it has not been promulgated; that article 5 of the budget law of 1890-1891 modified the previous provisions in prescribing the payment of the tax of 2 cents per ton, this being evident because instead of 1,000 *pesos*, which appears in 1888-1889 on the budget as receipt, the $506.80 of the surface tax of the 'Caborrojeña' should have been added thereto; and instead of $1,506.80, as receipt, there appears 400 *pesos*, which is what would have accrued from the surface-tax of the other grants. This is why he interposes an administrative appeal, the decision excepted to coming under articles 1 and 2 of the Royal Decree and 1 and 3 of the regulations.

"The district attorney in his answer requested that the decision excepted to be declared legal and proper, and the plaintiff adjudged to satisfy the surface taxes due by him, in accordance with the liquidation made, with costs. He alleged the following facts: The application for the 14 salt-mine claims and the inquiry proceedings in regard to the concession; the issuance of the title to Toro on April 5, 1890, and the seventh condition thereof mentioned in the first finding of fact. That in the inquiry proceedings, upon granting the concession, it was provided that the fixed surface tax began to accrue on October 10, 1889; that the Treasury neglected to collect the taxes ac-

cruing during the years following the concession; that in 1899 the Civil Secretary demanded payment of the amount due for ten years, which he refused to pay, appealing to the Military Governor, who, on March 27, 1900, overruled his contention, from which decision he took an appeal. As legal grounds he alleged: That a concession or grant is in the nature of a contract between the State and a private person, being analogous to the annuities of Title VII, Book II (*sic,* should be IV) of the Civil Code; that the grantee contracted the obligation to pay an annual surface tax of 20 *pesos* for each of the mining claims, according to article 5 of the Royal Decree of January 15, 1867; that said surface tax carries with it a recognition of the State's ownership; that as such it has legal force between the contracting parties, according to article 1091 of the Civil Code; that the changes in the mining laws do not destroy rights originating in the prior legislation, and, moreover, both laws provide for the payment of the surface tax by reason of the concession, and there could never be any reason for an exemption from payment up to 1895, when the mining laws were modified; that the budget law of 1888-1889, extended to 1889-1890, declaring salt mines to be exempt from dues, taxes and charges, but to pay 1 per cent of the gross proceeds, is not applicable to his concession, granted in October, 1890, he having accepted, among the conditions imposed, the obligation to pay the surface tax; that the circular of the Treasury issued October 18, 1888, published in the *Gazette* of the 25th, provides, under article 6, that salt-mine concessions shall continue to pay the surface tax, said tax being included among the receipts detailed under article 4, chapter 1, section 1, statement letter B; that the budget law was approved by Royal Order of December 24, 1888, published in the *Gazette,* and another Royal Order of the same date was issued to dispel doubts, Cortada & Co.'s application being denied; that the dues cannot be confused with the surface tax, in view of article 65, case 3, of Royal Decree of January 15, 1867, the provision of the law of March 3, 1895, and article 1648 of the Civil Code; and that in all the budget laws of the Island subsequent to 1888, the amount of surface taxes is entered among the receipts together with the percentage on gross proceeds.

"The trial having been opened for the proposal of evidence, the plaintiff offered the following: A certificate issued by the court clerk of article 9 of the budget law of 1888-1889, and Royal Orders Nos. 371 and 373, of October, 1888; certified copy of article 5 of the budget law of 1890-1891 and setting forth that the taxes on mines in the

budget for 1888-1889, amounted to 1,000 *pesos*, and that of the budget for 1890-1891, to 400; and the opinion of the expert witness appointed by the defendant, to the effect that the salt mines are natural.

"The evidence submitted by the *fiscal* consists of: The record of proceeding No. 25, mentioned in the first finding of fact, wherein appears a transcript of the concession title pertaining to the claims in question, and on folio 72 a declaration of the mining engineer, dated March 22, 1900, which reads: 'I must also inform Your Excellency that the fixed surface tax shall accrue from October 7 last, when the demarcation was made, pursuant to the provision of article 75 of aforesaid Royal Decree on Mining;' a transcript of Royal Order No. 430, of December 24, 1888, issued at the instance of E. Cortada & Co.

"The evidence having been joined to the record and briefs, a day was set for the hearing, at which the parties appeared and offered such arguments as were deemed favorable to their respective contentions.

"Presiding Judge Juan Morera Martínez prepared the opinion of the court.

"The positive mining law in force is based upon the principle of the State's eminent domain, limited by the concession of the mineral substances adhering to the soil, made to the person occupying the surface, and, as to other substances, by that awarded to the person first denouncing the existence thereof, the provisions governing the the matter being determined by the law of May 3, 1895, and the Civil Code.

"For the purpose of making manifest and maintaining aforesaid eminent domain, the decree of December 29, 1868, established an annual surface-tax per hectare, according to the corresponding section of the three into which useful substances of the mineral kingdom are subdivided by said decree; and this is the reason why the law of July 24, 1871, modifying the general bases of that of December 29, 1868, reproduces said section changing only the price per hectare, another price being fixed by the aforesaid law of May 3, 1895.

"Said law having been enacted in 1895, while the title was issued in April 5, 1890, with the 7th stipulation to pay the surface-tax and the charges on the gross proceeds established by the legal provisions in force, the plaintiff is estopped from denying his own acts or the law which regulated them for both the law of 1895 and that of 1868 provided for the payment thereof, the owner being guaranteed the possession of the land granted him as long as he paid said tax.

"Although the budget law of 1890-1891 exempts the exploitation of natural salt mines from all State and municipal taxes, dues and

charges, for ten years, said industry being bound only to pay to the Treasury a customs duty of two cents on every ton of salt exported, which merchandise was exempt from all sorts of tonnage dues, said provision shows that the surface-tax was not included in the exemption, as borne out by the words 'said industry being bound,' which evidently refers to the exclusion of taxes, imposts, surcharges or any other burden, but not to the right of eminent domain, upon which the surface-tax is based.

"It was so declared by Royal Order of December 24, 1888, when a request was made for an explanation of article 9 of the budget law of 1888-1889 which exempted salt mines from all taxes, imposts or burdens; and this declaration is the proper one, inasmuch as the revenues, annuities and credits pertaining to the State cannot be confused with the taxes, imposts and charges which constitute different items and articles and are regulated by different provisions.; and because the interpretation of laws establishing privileges should be confined to the written words contained therein and not made to include cases which were not in the mind of the legislator, nor expressly stated by him.

"Although the contracting parties have a right to demand that the rights stipulated in their favor be respected, they cannot exact more than was so stipulated, nor limit the powers of the other party as to what has not been expressly limited in the contract, which in this case is the title, and therefore the conditions imposed in accordance with the law regulating the same; and the surface-tax in force having been accepted by the plaintiff as also the budget law of 1888-1889 which declared natural salt-mines exempt from taxes, imposts and charges, for ten years, he recognized that he had no right to exemption from the surface-tax, according to the explanation given in the Royal Order mentioned in the preceding finding of fact.

"In view of the legal provisions cited, the title of ownership and conditions imposed under articles 1 and 7 of the law of May 3, 1895, those of the decree of December 29, 1868, relating thereto, and sections 335, 1184, 1222, 1223, 1225, 1248 to 1250, and 1255 of the Civil Code in force, we adjudge that we should dismiss, and do dismiss, the action brought by Alberto del Toro, and accordingly we should absolve and do absolve the People (Administration) from all liability under the said complaint, and sustain the decision appealed from, with costs against the plaintiff. Upon affirmation of this judgment, the administrative records are ordered to be returned together with a copy hereof. So by this our judgment do we pronounce, order and sign."

Notice of the foregoing judgment having been served upon counsel for the plaintiff, he took an appeal therefrom which was allowed both for review and stay of proceedings. The record was forwarded after citation of the parties, upon whose appearance the appeal was conducted under the proper procedure. A day was set for the hearing which was held, the attorney for the appellant and the *fiscal* being present, who presented such oral arguments as were deemed favorable to their respective contentions.

*Mr Díaz Navarro,* for appellant.

*Mr. Rossy, Fiscal,* for respondent.

MR. JUSTICE FIGUERAS, after making the foregoing statement of facts, delivered the opinion of the court.

The findings of fact, in so far as the same are material, are accepted, as also the conclusions of law contained in the judgment appealed from. Furthermore:

The question at issue is circumscribed to the construction that should be placed upon articles 9 and 5 of the budget laws of 1888-1889 and 1890-1891.

The text thereof reads as follows: "The exploitation of the natural salt mines of Porto Rico are declared exempt from all taxes, imposts and charges, both of the State and of the municipalities, for a period of ten years, said industry being bound to pay to the State only the impost of one per cent of the gross proceeds."

From a cursory perusal of the foregoing provision it is to be inferred that the exploitation refers only to taxes, imposts and charges levied upon the exploitation of the industry of natural salt mines, but it can in nowise refer to the payment of the surface-tax collected by the administration by virtue of the contract entered into with Alberto del Toro, the effectiveness whereof was recognized by him upon accepting, without protest, the condition to pay the surface-tax, according to the terms of the title issued to him on April 5, 1900, that is to say, after the budget law of 1888-1889 became effective,

and which is now cited by the appellant in support of his claim.

Were there any doubt as to this interpretation, it would be completely dispelled by Royal Order of December 24, 1888, issued in response to a claim filed by an owner of salt mines in the Island, and which, if only as a doctrine, is applicable to the case at bar. The pertinent portion thereof reads as follows:

"The surface-tax is a tribute fixed by the State upon the occupation of lands belonging to it, for the establishment of an industry by private persons to whom the concession is made, which tax cannot be confused with the taxes, imposts or charges from which natural salt-mines are exempted by the law."

Considering this authoritative construction of the above-mentioned budget laws, no doubt can be entertained as to the right of the administration to levy and collect the surface tax which forms the subject matter of the present controversy.

The costs of this appeal should be taxed against the appellant.

In view of the legal provisions cited in the judgment appealed from and the budget laws of 1888-1889 and 1890-1891, as also Royal Order of December 24, 1888, the certified decisions whereof appear on folios 47, 48 and 83, reverse, of the record of the court of this district, we adjudge that we should affirm, and do affirm, the judgment rendered on August 11, 1904, by the District Court of San Juan, and thus leave in effect the decision of March 27, 1900, appealed from, with costs of this appeal against the appellant, Alberto del Toro. This judgment is ordered to be communicated and the administrative records returned, that proper effect may be given thereto.

Chief Justice Quiñones, and Justices Hernández, Mac-Leary, and Wolf concurred.